IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| MARC WEINREICH, an individual,<br><br>      Plaintiff,<br>v.<br><br>CYNTHIA BROOKS, an individual, and GREENFIELD ENVIRONMENTAL TRUST GROUP, INC., a Massachusetts corporation,<br><br>      Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART BROOKS'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER AND GRANTING GREENFIELD'S MOTION TO TRANSFER**<br><br>Case No. 2:19-CV-953-TS-CMR<br><br>Judge Ted Stewart |

Plaintiff Marc Weinreich, who was a part-owner of Defendant Greenfield Environmental Trust Group, Inc. ("Greenfield"), challenges actions Greenfield and his former co-owner Defendant Cynthia Brooks allegedly took to freeze him out of Greenfield. There are currently three motions pending: (1) Brooks's Motion to Dismiss for Personal Jurisdiction or, in the alternative, to Transfer; (2) Greenfield's Motion to Transfer; and (3) Weinreich's Motion to Amend the Complaint. For the following reasons, the Court finds it does not have personal jurisdiction over Brooks and transfers the claims against her to the District of Massachusetts under 28 U.S.C. § 1631 and grants Greenfield's motion to transfer to the District of Massachusetts. Accordingly, the Court declines to rule on Weinreich's motion to amend.

1

I.        BACKGROUND FACTS

Brooks is a citizen and resident of Massachusetts, and Greenfield is a company that operates virtually and is incorporated and has its principal place of business in Massachusetts.[1] Weinreich currently lives in Utah.[2] In or around 2000, Weinreich and Brooks both lived in Massachusetts and began running Greenfield together.[3] They allocated 51% ownership of Greenfield to Brooks and 49% ownership to Weinreich, and they worked together from 2000 to 2018.[4] From 2000 through 2008, both Weinreich and Brooks lived and worked in Massachusetts,[5] and in 2009, Weinreich moved to Utah.[6] According to Weinreich, he moved "in part so that [he] could be closer to Greenfield's existing Montana project,"[7] but Brooks says she "did not request or require Mr. Weinreich move to Utah."[8] Weinreich alleges Brooks participated in and/or approved numerous Greenfield activities in and related to Utah since 2009, including approving a press release noting Greenfield had a satellite office in Utah,[9] publishing employee guides stating Greenfield's corporate headquarters was located in Utah,[10] including the Utah contact information on the Greenfield website,[11] registering Greenfield to do business in Utah,[12]

---

[1] Docket No. 3, at 10.
[2] *Id.*
[3] Docket No. 49 ¶ 2.
[4] *Id.* ¶¶ 3, 6.
[5] *Id.* ¶ 7.
[6] *Id.* ¶ 8.
[7] *Id.*
[8] Docket No. 22 ¶ 8.
[9] Docket No. 49 ¶ 10.
[10] *Id.* ¶ 12.
[11] *Id.* ¶¶ 11, 14–15.
[12] *Id.* ¶ 13.

forwarding some Greenfield mail to Utah,[13] leasing property in Utah,[14] and employing Utah residents.[15] Brooks also regularly communicated with Weinreich and other Utah employees about Greenfield business.[16]

In May 2018, Brooks attended a company meeting in Salt Lake City, Utah.[17] Weinreich alleges Brooks pulled him aside at that meeting and "accused [him] of trying to steal Greenfield from her and vowed that she would not let that happen."[18] On July 1, 2019—over a year after the Utah meeting—Brooks distributed a Reorganization Plan that allegedly stripped Weinreich of his responsibilities and constructively fired him.[19] Weinreich filed a Complaint against Defendants[20] alleging shareholder oppression and wrongful discharge in violation of public policy against Brooks and Greenfield, breach of contract against Greenfield, and breach of fiduciary duty against Brooks.[21] The pending motions include (A) Brooks's Motion to Dismiss for Lack of Personal Jurisdiction, or, in the alternative, to Transfer; (B) Greenfield's Motion to Transfer; and (C) Weinreich's Motion to Amend the Complaint. Each will be addressed individually.

---

[13] *Id.* ¶ 19.

[14] *Id.* ¶ 18.

[15] *Id.* ¶ 20.

[16] *Id.* ¶¶ 22, 24.

[17] *Id.* ¶ 26.

[18] *Id.* ¶ 28.

[19] *Id.* ¶ 30.

[20] Weinreich originally brought his Complaint against three defendants: Brooks, Greenfield, and Greenfield Environmental Multistate Trust LLC. *See* Docket No. 3, at 1. However, the parties submitted a stipulated motion to dismiss Greenfield Environmental Multistate Trust LLC on March 15, 2020, *see* Docket No. 27, and this Court granted that motion on March 27, 2020, *see* Docket No. 30.

[21] Docket No. 3, at 7–30.

## II. ANALYSIS

A. Motion to Dismiss

Brooks submitted a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2). As a general rule, "[t]he [p]laintiff bears the burden of establishing personal jurisdiction over the defendant."[22] "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion."[23] A plaintiff can do this "by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."[24] When analyzing the existence of personal jurisdiction, a court must take as true all well-pleaded facts and all "factual disputes in the parties' affidavits must be resolved in plaintiff['s] favor."[25]

Personal jurisdiction must be consistent with the forum state's long-arm statute and the due process clause of the Fourteenth Amendment.[26] Utah's long-arm statute "assert[s] jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution,"[27] so the Court need only conduct a due process analysis. Weinreich alleges the Court has general and specific jurisdiction over Brooks, so the Court must determine whether either of these is consistent with due process.

---

[22] *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988)).

[23] *Id.*

[24] *Id.*

[25] *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

[26] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010).

[27] *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1297 (10th Cir. 1999) (quoting Utah Code Ann. § 78-27-22).

1. General Jurisdiction

General jurisdiction, also known as all-purpose jurisdiction, grants jurisdiction over a defendant for any claim regardless of where the events related to that claim occurred.[28] General jurisdiction is consistent with due process when the defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."[29] "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."[30] The Supreme Court has only found general jurisdiction over an individual defendant when the individual is domiciled in the forum state, when the nonresident individual explicitly consents to jurisdiction in the forum state, or when the nonresident individual is physically present in the forum state.[31] Weinreich does not allege any of these. Instead, he argues Utah has general jurisdiction over Brooks because she was a primary participant in the activities that allegedly establish general jurisdiction over Greenfield in Utah.

The Tenth Circuit has recognized that "employees of a corporation that is subject to the personal jurisdiction of the courts of the forum may themselves be subject to jurisdiction if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation."[32] The Tenth Circuit's primary participant rule relies on *Calder v. Jones*, which held that specific jurisdiction existed over the defendant employees because they were "primary

---

[28] *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

[29] *Id.*

[30] *Id.* at 924.

[31] *Grice v. VIM Holdings Grp., LLC*, 280 F. Supp. 3d 258, 269–70 (D. Mass. 2017) (collecting cases).

[32] *Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996) (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

participants in an alleged wrongdoing."[33] This language suggests the primary participant justification is limited to specific jurisdiction for the actions underlying the claims and does not extend general jurisdiction over employees.[34] This is consistent with the principle that general jurisdiction exists where the defendant is "essentially at home." In most cases, employees are not "at home" in a state simply because their work requires them to conduct activities in that state. Furthermore, Weinreich's interpretation would allow employees to be sued for any reason in states they have only contacted in connection with their jobs. This cannot be.

Weinreich alleges there is general jurisdiction over Brooks in Utah because she approved a press release that described the Utah office as a satellite office of Greenfield, approved the use of a Utah telephone number on Greenfield's website, approved Greenfield designating Utah as its corporate headquarters, and approved and was involved in transferring Greenfield activities to Utah and hiring employees in Utah. Weinreich also alleges that Brooks forwarded some Greenfield mail to Utah, regularly contacted Weinreich and other Utah employees, and attended two meetings in Utah as part of her responsibilities to Greenfield. Excluding the two meetings in Utah, she could have conducted and approved all of these activities from her home in Massachusetts, and she has only visited Utah a handful of times in over ten years. Nothing about Brooks's actions suggests she is "essentially at home" in Utah or that she could be sued in Utah for actions unrelated to Greenfield. Therefore, general jurisdiction over Brooks in Utah is inconsistent with due process.

---

[33] 465 U.S. at 790.

[34] *See Dig. Mentor, Inc. v. Ovivo USA, LLC*, No. C17-1935-RAJ, 2018 WL 6724765, at *3 (W.D. Wash. Dec. 21, 2018) ("*Calder* does not indicate that general jurisdiction can be established through this 'primary participant theory,' only that in assessing the individual defendants' contacts with the forum State, *specific* jurisdiction was proper where their individual actions were directed toward a resident of that forum State.").

2. Specific Jurisdiction

Unlike general jurisdiction, specific jurisdiction only exists over a defendant when there is a connection between the forum and the underlying controversy.[35] To determine whether specific jurisdiction is consistent with due process, courts conduct a two-part inquiry: "First, we must determine whether the defendant has such minimum contacts with the forum state 'that he should reasonably anticipate being haled into court there.'"[36] "Second if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'"[37]

The minimum contacts analysis "focuses on the relationship among the defendant, the forum, and the litigation."[38] To exercise jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State."[39] The minimum contacts test is satisfied when (1) the defendant purposefully directed his or her activities at the forum state and (2) the plaintiff's injuries arise out of defendant's forum-related activities.[40] The Supreme Court has clarified that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."[41]

---

[35] *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S. F. Cty.*, 137 S. Ct. 1773, 1780 (2017).

[36] *OMI Holdings*, 149 F.3d at 1091 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

[37] *Id.* (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987)).

[38] *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotations and citations omitted).

[39] *Id.*

[40] *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Dudnikov*, 514 F.3d at 1071.

[41] *Walden*, 571 U.S. at 290.

The minimum contacts analysis in *Anzures v. Flagship Restaurant Group* is analogous and instructive.[42] Anzures was one of three members of an LLC who sued one of the other members, Flagship Restaurant Group, a Nebraska organization, and Nick Hogan, a Nebraska resident who partially owned Flagship.[43] Like Weinreich, Anzures claimed the defendants "attempted to squeeze Anzures out [of the LLC]" by restructuring it.[44] However, the Tenth Circuit found Colorado did not have personal jurisdiction over the defendants.[45]

The court found the allegedly tortious conduct—restructuring the ownership of the LLC—was not purposefully directed at Colorado.[46] The court reasoned that the LLC was registered in Nevada, had its principal place of business in Nebraska, and Anzures originally reached out to Hogan in Nebraska to propose forming the LLC, so the formation, structure, and restructure of the LLC were not directed at Colorado.[47] The court also found the LLC's business contacts with Colorado, such as hiring a Colorado attorney and Anzures's sales activities, were not related to the reorganization, and Anzures's claims did not arise out of those Colorado activities.[48] "In short, defendants' *suit-related* conduct did not create any meaningful contacts with Colorado itself, and the fact that Anzures was affected in Colorado (because he resides there) is insufficient to authorize personal jurisdiction over defendants."[49]

---

[42] 819 F.3d 1277 (10th Cir. 2016).

[43] *Id.* at 1278–79.

[44] *Id.* at 1279.

[45] *Id.* at 1279, 1281.

[46] *Id.* at 1281.

[47] *Id.*

[48] *Id.*

[49] *Id.* (emphasis added).

Weinreich argues *Anzures* is not analogous because both defendants moved to dismiss for lack of personal jurisdiction and there was not personal jurisdiction over either defendant. Weinreich argues that unlike in *Anzures* there is jurisdiction over Greenfield in Utah, and Brooks's participation in Greenfield's Utah-related activities supports finding jurisdiction over Brooks as well. But the court did not rely on the corporation defendant's jurisdictional status to determine if there was jurisdiction over the individual defendant. Rather, "[m]inimum contacts must be found as to each defendant over whom the court exercises jurisdiction."[50] With these guiding principles and the comparable facts and analysis in *Anzures*, the Court finds it does not have specific jurisdiction over Brooks as explained below.

For tort claims like those against Brooks, courts first look to whether the defendant "'purposefully directed' its activities at the forum state."[51] Purposeful direction requires "an intentional action . . . expressly aimed at the forum state . . . [and] knowledge that the brunt of the injury would be felt in the forum state."[52] Weinreich argues Brooks acted intentionally and knew her actions would harm Weinreich in Utah, but this is not sufficient. Weinreich must also show that Brooks expressly aimed her actions at Utah. Like in *Anzures*, Brooks's allegedly tortious conduct involved altering the ownership structure of Greenfield. Greenfield is incorporated in and has its principal place of business in Massachusetts and Brooks originally reached out to Weinreich in Massachusetts to form Greenfield. In addition, Brooks conducted the allegedly tortious activities in Massachusetts. Thus, the formation, structure, and reorganization of Greenfield is not related to or expressly aimed at Utah.

---

[50] *Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1020 (10th Cir. 1990).

[51] *Dudnikov*, 514 F.3d at 1071.

[52] *Id.* at 1072.

Weinreich also alleges that Brooks yelled at him and accused him of trying to steal Greenfield from her at a meeting in Utah in 2018. Brooks did not mention restructuring Greenfield or any other allegedly tortious action, so this statement and its location do not add anything to suggest that Brooks expressly aimed her allegedly tortious actions toward the state of Utah. And "the fact that [Weinreich] was affected in [Utah] (because he resides there) is insufficient to authorize personal jurisdiction over [Brooks]."[53]

Brooks may have purposefully directed conduct at Utah when approving and participating in Greenfield's Utah business activities, but Weinreich's claims do not arise out of these activities as explained below.

The "arise out of" element is a causal requirement, but the Tenth Circuit has not determined whether it requires proximate causation or but-for causation.[54] Under the proximate causation approach, courts "examine[] whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim."[55] Under the but-for causation approach, "any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction."[56] Weinreich's allegations fail both tests.

Weinreich relies heavily on the Utah gathering in 2018, arguing that his disagreement with Brooks was the catalyst for Brooks's tortious activity. However, this allegation is conclusory and speculative. Even if it were well-pleaded, this encounter with Brooks did not cause nor is it relevant to the merits of the claims against Brooks. Weinreich also mentions that Brooks communicated with him in Utah regarding the reorganization, but "[i]t is well-

---

[53] *Anzures*, 819 F.3d at 1281 (citing *Walden*, 134 S. Ct. at 1126).

[54] *Dudnikov*, 514 F.3d at 1079.

[55] *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 319 (3d Cir. 2007)).

[56] *Id.* at 1078.

established that phone calls" and similar communications "are not necessarily sufficient in themselves to establish minimum contacts."[57] As for Brooks's approval of and participation in Greenfield's activities in Utah, these actions are not related to or in the causal chain leading to the reorganization or this lawsuit. Therefore, Weinreich has not shown sufficient minimum contacts with Utah, and the Court does not have jurisdiction over Brooks.

3. Transfer Under 28 U.S.C. § 1631

28 U.S.C. § 1631 provides that when a "court finds that there is a want of jurisdiction, the court shall, if it is in the interests of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed." "[T]he Tenth Circuit has instructed that 'after the enactment of § 1631, where the court determines that it lacks jurisdiction . . . the correct course is to transfer the action pursuant to § 1631.'"[58] But the court has discretion to decide whether to transfer the case or dismiss the defendant when it lacks jurisdiction.[59]

"Before transferring a case [under § 1631], the transferor court must 'satisfy itself that the proposed transferee court has personal jurisdiction over the parties,' and determine whether such a transfer is in the interest of justice."[60] The Tenth Circuit identified the following three factors to determine whether transfer is in the interest of justice: "(1) whether the claims would be time

---

[57] *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995).

[58] *Sage v. Bird City Dairy, LLC*, No. 12-cv-02985-RBJ, 2013 WL 1444370, at *3 (D. Colo. Apr. 8, 2013) (unpublished) (quoting *Trujillo v. Williams*, 465 F.3d 1210, 1223 (10th Cir. 2006)).

[59] *See Trujillo*, 465 F.3d at 1222–23; *Driggers v. Clark*, 422 F. App'x 747, 749–50 (10th Cir. 2011).

[60] *Res. Assocs. Grant Writing & Evaluation Servs., Inc. v. Southampton Union Free Sch. Dist.*, 193 F. Supp. 3d 1200, 1252–53 (D.N.M. 2016) (quoting *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 105 (10th Cir. 2012)).

barred if filed anew in the proper forum; (2) whether the claims alleged are likely to have merit; and (3) whether the claims were filed in good faith or if it was clear at the time of filing that the court lacked the requisite jurisdiction."[61]

Brooks requests the case be transferred to the District of Massachusetts, which would have jurisdiction over Brooks because she lives there. As for the interest of justice, there is no evidence that Weinreich's claims would be time-barred if he were required to refile. The Complaint demonstrates that the claims are likely to have merit. And finally, there is no evidence that Weinreich filed in this forum in bad faith. These factors favor transfer.[62] Therefore, the Court will transfer the claims against Brooks to the District of Massachusetts.

B. Motion to Transfer

Greenfield submitted a motion to transfer under 28 U.S.C. § 1404(a), requesting this matter be transferred to the District of Massachusetts. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The "party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient,"[63] and the district court has discretion in deciding whether to transfer.[64] Courts weigh the following factors to determine whether the existing forum is inconvenient:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of

---

[61] *Id.* at 1253 (citing *Grynberg*, 490 F. App'x at 105).

[62] *Cf. id.* (finding the factors favor transfer when the parties did not address whether claims would be time-barred but the remaining two factors favor transfer).

[63] *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (internal quotations and citations omitted).

[64] *See Navajo Health Found.—Sage Mem'l Hosp., Inc. v. Burwell*, 86 F. Supp. 3d 1211, 1224 (D.N.M. 2015); *Knapp v. Romer*, 909 F. Supp. 810, 812 (D. Colo. 1995); *Allstate Ins. Co. v. Emp'rs Reinsurance Corp.*, 715 F. Supp. 1502, 1502 (D. Kan. 1989).

witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and[] all other considerations of a practical nature that make a trial easy, expeditious and economical.[65]

First, the language of § 1404(a) "permit[s] transfer only to a district where plaintiff would have the right, independent of the wishes of the defendant, to bring the action."[66] Defendants are domiciled in Massachusetts and would be subject to jurisdiction there, and the District of Massachusetts is subject to the same subject matter jurisdiction as this Court, so the Complaint could be brought there. Next, to satisfy its burden to show that Utah is an inconvenient forum, Greenfield addresses four factors: (1) the plaintiff's choice of forum, (2) the accessibility of witnesses and other sources of proof, (3) the advantage of having a local court determine questions of local law, and (4) the interstate judicial system's interest in efficiency.

1. The Plaintiff's Choice of Forum

The plaintiff's choice of forum is "given considerable weight."[67] "[U]nless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed."[68] But the plaintiff's choice is given less weight "where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum."[69] Notably, "the inquiry at this stage is not whether some other forum has a greater material relation or significant

---

[65] *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1167 (internal quotations and citations omitted).

[66] *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965).

[67] *Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 567 (10th Cir. 1978).

[68] *Scheidt*, 956 F.2d at 965 (quoting *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972)).

[69] *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168 (internal quotations and citations omitted).

connection—it is whether this particular forum has at least some 'material relation or significant connection' to 'the facts giving rise to the lawsuit.'"[70]

Weinreich emphasizes that Greenfield conducted business in Utah and that Weinreich lives in Utah. However, Greenfield's activities in Utah and Weinreich's home state are not the facts that give rise to his claims. Weinreich also states the encounter at the Utah gathering in 2018 was a key event in this matter, but this allegation is conclusory and speculative. Brooks did not mention that she was contemplating restructuring the company or any other allegedly tortious activity during that encounter. And the allegedly tortious conduct actually occurred in Massachusetts. Therefore, Utah does not have a substantial connection to the lawsuit, and Weinreich's choice of forum is given little weight.

2. The Accessibility of Witnesses and Other Sources of Proof

"The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)."[71] "To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary."[72]

Greenfield has failed to meet its burden of showing that witnesses and other sources of proof would not be accessible in Utah. Though Greenfield argues Weinreich is the only witness who lives in Utah and that at least six witnesses live on the east coast, this is not sufficient.

---

[70] *F.H.G. Corp. v. Green Wave, Inc.*, No. 1:16-cv-00147-JNP, 2017 WL 2728412, at *5 (D. Utah June 23, 2017) (quoting *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168).

[71] *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169 (quoting *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)).

[72] *Id.* (internal quotations, citations, and alterations omitted).

Greenfield has not identified these six witnesses or their locations with any specificity; indicated the quality or materiality of these witnesses' testimony; or produced any evidence to show that the witnesses would be unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the compulsory process would be necessary. In addition, Weinreich notes Brooks was the only Greenfield employee who lived in Massachusetts as of July 1, 2019. Weinreich also intends to call witnesses who do not live in Massachusetts but would be willing to participate in a trial in Utah. Therefore, most of the witnesses other than Weinreich or Brooks would likely have to travel regardless of whether the trial is in Utah or Massachusetts.

As for documents and other sources of proof, Greenfield suggests Massachusetts would be more convenient because Greenfield is based in Massachusetts and has its "corporate, financial, and accounting records" there.[73] However, as Weinreich contends, Greenfield is also a virtual company, so most of its "documents are stored electronically and can easily be transmitted electronically."[74] Greenfield does not offer any further explanation about why documents and other evidence could not be available in Utah through shipping or electronic means. Therefore, Greenfield has not demonstrated that evidence would not be accessible or that access would be inconvenient in Utah. This factor is neutral.

3. The Advantage of Having a Local Court Determine Questions of Local Law

"In a diversity action, courts prefer the action to be adjudicated by a court sitting in the state that provides the governing substantive law."[75] "This factor receives less weight when the case involves relatively simple legal issues."[76] The parties disagree about whether Utah or

---

[73] Docket No. 25, at 9.

[74] Docket No. 48, at 9.

[75] *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169.

[76] *Id.* (internal quotations, citations, and alterations omitted).

Massachusetts law applies to this case. Greenfield argues that Massachusetts law will govern while Weinreich contends that Utah law applies and that the Court need not decide what state's law applies at this early stage. However, other courts have determined which state's law is most likely to apply when analyzing a motion to transfer.[77] This Court will do the same.

Federal courts "look to the conflict of laws rules of . . . the forum state . . . to determine which state's laws will be controlling."[78] Utah applies the most significant relationship test to tort and contract claims.[79] Under this test, "the rights and liabilities of the parties . . . are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties."[80] The factors to consider are "the place where the injury occurred;" "the place where the conduct causing the injury occurred;" "the domicil, residence, nationality, place of incorporation and place of business of the parties;" and "the place where the relationship, if any, between the parties is centered."[81] Weinreich alleges he was injured in Utah. However, the conduct causing the injury occurred in Massachusetts, Greenfield and Brooks are both domiciled in Massachusetts, and the relationship between the parties is

---

[77] *See Rodriguez-Cayro v. Rodriguez-Cayro*, No. 2:17-cv-01197-HCN-PMW, 2019 WL 4917066, at *4 (D. Utah Oct. 4, 2019) (analyzing a motion to transfer and finding Pennsylvania law likely applies); *Alpha Real Estate Holdings, L.P. v. Jabbes 6, Inc.*, No. 2:10-cv-1210, 2011 WL 1326932, at *3 (D. Utah Apr. 7, 2011) (analyzing a motion to transfer and finding Ohio law most likely applies); *RES-NV, LLC v. Rosenberg*, No. 2:13CV00115DAK, 2013 WL 3548697, at *5 (D. Utah July 11, 2013) (analyzing a motion to transfer and declining to determine which state law applies but finding the case has a significant relationship with both Nevada and Utah); *Dworkin v. Hustler Magazine, Inc.*, 647 F. Supp. 1278, 1281–82 (D. Wyo. 1986) (analyzing a motion to transfer and finding New York law most likely applies).

[78] *Mountain Fuel Supply v. Reliance Ins. Co.*, 933 F.2d 882, 887–88 (10th Cir. 1991) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 491 (1941)).

[79] *Am. Nat'l Fire Ins. Co. v. Farmers Ins. Exch.*, 927 P.2d 186, 190–91 (Utah 1996).

[80] *Forsman v. Forsman*, 779 P.2d 218, 219 (Utah 1989) (quoting Restatement (Second) of Conflict of Laws § 145(1)).

[81] *Id.* (quoting Restatement (Second) of Conflict of Laws § 145(2)).

centered around a Massachusetts corporation. These factors suggest Massachusetts has the most significant relationship with this lawsuit and Massachusetts law most likely applies.

However, the claims against Greenfield include breach of contract and wrongful discharge in violation of public policy.[82] These are not complex areas of the law, and it would not be difficult for this Court to apply Massachusetts law. Thus, this factor only slightly favors transfer to Massachusetts.

4. The Interstate Judicial System's Interest in Efficiency

"This factor asks whether the forum state is the most efficient place to litigate the dispute."[83] "Key to this inquiry [is] the location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation."[84] Witnesses are located throughout the country, the wrong underlying the lawsuit occurred in Massachusetts, and Massachusetts law most likely applies. Most notably, declining to transfer Greenfield would result in piecemeal litigation with Brooks litigating in Massachusetts and Greenfield litigating in Utah. Avoiding piecemeal litigation weighs strongly in favor of transfer.[85] The piecemeal litigation also influences the

---

[82] Weinreich also has a claim for shareholder oppression against Greenfield, but this is supported by a Utah statute and, according to Weinreich, there is no comparable statute in Massachusetts. This claim will not be available if Massachusetts law applies, so it is not included in this analysis.

[83] *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1163 (quoting *AST Sports Sci., Inc. v. CLF Distribution, Ltd.*, 514 F.3d 1054, 1062 (10th Cir. 2008)).

[84] *Id.* (quoting *TH Agric. & Nutrition LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1296 (10th Cir. 2007)).

[85] *See Sprint Commc'ns, L.P. v. Cox Commc'ns, Inc.*, 896 F. Supp.2d 1049, 1068 (D. Kan. 2012) ("[T]he Court's interest in avoiding duplicative and piecemeal litigation strongly favors transfer of this matter to . . . where all parties . . . may be sued.").

outcomes of the other § 1404(a) factors.[86] For instance, it would be inconvenient for witnesses to testify in both Utah and Massachusetts, and the piecemeal litigation tips the balance further in favor of transferring rather than deferring to Weinreich's already-tenuous choice of forum. For these reasons, the Court will grant Greenfield's motion and transfer this case to the District of Massachusetts.

C. Motion to Amend

This case will be transferred to the District of Massachusetts, so the Court declines to address the merits of Weinreich's motion to amend.

### III. CONCLUSION

It is therefore

ORDERED that Brooks's Motion to Dismiss, or in the alternative, to Transfer (Docket No. 21) is GRANTED IN PART. It is further

ORDERED that Greenfield's Motion to Transfer (Docket No. 25) is GRANTED.

The Court will transfer the entire matter to the District of Massachusetts.

DATED March 23, 2021.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[86] *Cf. Monterey Bay Military Hous., LLC v. Ambac Assurance Corp.*, No. 17-cv-04992-BLF, 2019 WL 4888693, at *25 (N.D. Cal. Oct. 3, 2019) (revisiting the § 1404(a) factors after determining that the court does not have personal jurisdiction over all the defendants and finding the factors then favored transfer).